**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 16 2013

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LOUIS JERRY EDWARDS, M.D., et al.,      )
                                        )
Plaintiffs,                             )    Case No. _4:13 cv 0224-JMM_
                                        )
v.                                      )
                                        )
JOSEPH M. BECK, M.D., et al.,           )
                                        )
Defendants.                             )

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

This case challenges the constitutionality of Act 301 of the 89th General Assembly of Arkansas, to be codified at Ark. Code Ann. §§ 20-16-1301 to 20-16-1307 (the "Act"). This extreme, dangerous ban on previability abortion care violates controlling United States Supreme Court precedent. Plaintiffs, two physicians who provide abortion care in Arkansas, ask the Court to issue a preliminary injunction prior to the Act's effective date to prevent the irreparable harm to themselves and their patients that would result if Arkansas enforced the ban.

### STATEMENT OF FACTS

In Arkansas, approximately 20% of abortions take place at or after twelve (12) weeks of pregnancy.[1] Arkansas Department of Health, Induced Abortions Data, Act 353, 2011, Induced Abortions by Gestation and Age, *available at* http://www.healthy.arkansas.gov/ programsServices/healthStatistics/Documents/abortion/2011Itop.pdf (reporting that, in 2011, of 4,033 abortions performed in Arkansas, 815 took place at and after 12 weeks). Plaintiff Louis Jerry Edwards, M.D., is a board-certified obstetrician-gynecologist licensed to practice medicine in

---

[1] Arkansas law prohibits post-viability abortions except when "necessary to preserve the life or health of the woman," Ark. Code Ann. § 20-16-705(a), or when "the pregnancy is the result of rape or incest perpetrated on a minor," Ark. Code Ann. § 20-16-705(c). The relief Plaintiffs seek in this lawsuit would not affect that prohibition.

Arkansas. Edwards Decl. ¶ 1. He serves as an associate physician at Little Rock Family Planning Services, Inc., in Little Rock, Arkansas, where he provides a broad range of reproductive health services, including previability abortion care at and after 12 weeks of pregnancy, and supervises other staff members. *Id.* ¶¶ 2-3. Plaintiff Tom Tvedten, M.D., also a physician licensed to practice medicine in Arkansas, serves as the Medical Director of Little Rock Family Planning Services, Inc. Tvedten Decl. ¶¶ 1-2. He, too, provides a broad range of reproductive health care services, including previability abortion care at and after 12 weeks of pregnancy, and supervises other staff members. *Id.* ¶¶ 2-3.

Since 1973, the Supreme Court has consistently held that a state may not ban abortion prior to viability, even if the ban contains exceptions for particular circumstances. *See infra* at 4-8. Viability is the point in a pregnancy at which "there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support." *Colautti v. Franklin*, 439 U.S. 379, 388 (1979). This point differs with each pregnancy, but viability generally is not possible until 24 weeks, months after the Act's 12-week cut-off. *See* Cathey Decl. ¶ 4. Consistent with this medical reality, for purposes of its criminal ban on post-viability abortions, Arkansas law provides that "a fetus shall be presumed not to be viable prior to the end of the twenty-fifth week of the pregnancy." Ark. Code Ann. § 20-16-703. Thus, there can be no dispute that the Act is a ban on previability abortions.

On March 6, 2013, the Arkansas General Assembly enacted Act 301 over Governor Beebe's veto. The Act adds a new subchapter to Title 20, Chapter 16, of the Arkansas Code. *See* Act § 1301. Starting at 12 weeks, it prohibits abortion care when fetal cardiac activity can be detected during an abdominal ultrasound examination. *See* Act §§ 1303-1304. In particular, the Act requires physicians to perform an "abdominal ultrasound test" to ascertain if there is fetal

cardiac activity; if there is, and if the patient is 12 or more weeks pregnant, the Act bans the abortion care she seeks.  Act § 1304(a).  Unless a miscarriage has already occurred, fetal cardiac activity is present—and detectable via abdominal ultrasound—in all normally-progressing pregnancies by 12 weeks.  *See* Cathey Decl. ¶ 5.  Thus, the Act is an outright ban on abortion care starting at 12 weeks.

The Act allows a woman to obtain an abortion at or after 12 weeks only under three narrow exceptions:  when it is necessary to save a woman's life; when a pregnancy resulted from rape or incest as defined by Arkansas law; or when a medical emergency, as defined by the Act, exists.  *See* Act § 20-16-1305(b).  A violation of the Act "shall result in the revocation of the medical license of the person authorized to perform abortions under Arkansas law."  Act § 1304(b).  Defendants, who are the members of the Arkansas State Medical Board, are charged with enforcement of the Act.  *Id.*

Unless enjoined by the Court, the Act will take effect ninety (90) days after *sine die* adjournment of the General Assembly.  *See* Ark. Const. art. 5, § 1; *Fulkerson v. Refunding Bd.*, 147 S.W.2d 980, 983 (Ark. 1940).  That adjournment is currently scheduled to take place on April 19, 2013; therefore, the Act is currently scheduled to take effect on July 18, 2013.

## ARGUMENT

### Plaintiffs Are Entitled to a Preliminary Injunction to Preserve the *Status Quo* During the Pendency of This Litigation.

### I.    Preliminary Injunction Standard.

"The primary function of a preliminary injunction is to preserve the *status quo* until, upon final hearing, a court may grant full, effective relief." *Kan. City S. Transp. Co., Inc. v. Teamsters Local Union No. 41*, 126 F.3d 1059, 1066 (8th Cir. 1997) (quotation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he

is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *accord Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 989-98 (8th Cir. 2011). For the reasons set forth below, Plaintiffs satisfy this standard and are therefore entitled to a preliminary injunction to preserve the *status quo* during the pendency of this litigation.

## II. Plaintiffs Are Likely to Succeed on the Merits of Their Claim That the Act is Unconstitutional.

### A. The Due Process Clause Prohibits Arkansas from Banning Abortion Care Prior to Viability.

Relying on the Due Process Clause of the Fourteenth Amendment, the U.S. Supreme Court has held unequivocally that a state may not ban abortion prior to viability.[2] *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 846 (1992) (joint opinion of O'Connor, Kennedy and Souter, JJ.) ("Before viability, the State's interests are not strong enough to support a prohibition of abortion ... ."); *Roe v. Wade*, 410 U.S. 113, 163-65 (1973). Because the Act bans abortion prior to viability, *see* Ark. Code Ann. § 20-16-1304(a), it is unconstitutional as a matter of law, *see Casey*, 505 U.S. at 846; *Roe*, 410 U.S. at 163-65.

In *Roe*, the Supreme Court recognized that the right to privacy, "founded in the

---

[2] Nor, under controlling Supreme Court precedent, can Arkansas statutorily define "viability" as occurring when there is "a detectible fetal heartbeat," Act § 1302(8), or at a specific gestational age such as 12 weeks, *see* Act §1304(a). As a constitutional matter, viability means the ability to survive outside the uterus. *Colautti v. Franklin*, 439 U.S. 379, 388 (1979) ("Viability is reached when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support."). States cannot equate viability with a specific gestational age because, as a matter of constitutional law, the determination must rest with the attending physician. *See, e.g., Colautti*, 439 U.S. at 388-89; *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 64 (1976); *Jane L. v. Bangerter*, 102 F.3d 1112, 1118 (10th Cir. 1996) ("The State's arguments . . . are disingenuous and unpersuasive because they are grounded on its continued refusal to accept governing Supreme Court authority holding that viability is a matter to be determined by an attending physician, and that until viability is actually present the State may not prevent a woman from choosing to abort.").

Fourteenth Amendment's concept of personal liberty and restrictions upon state action," is "broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Roe*, 410 U.S. at 153. It went on to carefully balance that right against states' interests in protecting potential life and ultimately concluded that a state may not ban abortion prior to viability. *Id.* at 164-65. Thoroughly weighing "the wide divergence of thinking on [the] most sensitive and difficult question" of when meaningful human life begins, *id.* at 160, the Court concluded that, "by adopting one theory of life, [the State] may [not] override the rights of the pregnant woman that are at stake." *Id.* at 162. It held that, although "the State does have an . . . important and legitimate interest in protecting the potentiality of human life," *id.*, that interest does not become "compelling" until the point of "viability," *id.* at 163.

The Court subsequently reaffirmed these principles in *Casey*. *See Casey*, 505 U.S. at 845-46. In that case, the Court explained that medical and scientific advancements that have occurred subsequent to *Roe* "have no bearing on the validity of *Roe*'s central holding, that viability marks the earliest point at which the State's interest in fetal life is constitutionally adequate to justify a legislative ban on nontherapeutic abortions." *Id.* at 860. It went on to say, emphatically, that: "We conclude the line should be drawn at viability, so that before that time the woman has a right to choose to terminate her pregnancy." *Id.* at 870; *see also id.* at 871 ("The woman's right to terminate her pregnancy before viability is the most central principle of *Roe v. Wade*. It is a rule of law and a component of liberty we cannot renounce."). The Court also held that a state cannot save an otherwise unconstitutional ban on previability abortions by including exceptions to the ban for particular circumstances. *See id.* at 879 ("Regardless of whether exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability.").

Not surprisingly, subsequent attempts to ban abortion prior to viability have been uniformly rejected by the courts. *See, e.g., Jane L. v. Bangerter*, 102 F.3d 1112, 1118 (10th Cir. 1996) (holding that a ban on abortion after 20 weeks, subject to limited exceptions, is unconstitutional); *Sojourner T. v. Edwards*, 974 F.2d 27, 30 (5th Cir. 1992) (holding that a ban on abortion at all stages of pregnancy, subject to limited exceptions, is unconstitutional), *cert. denied sub nom Edwards v. Sojourner T. and Connick v. Sojourner T.*, 507 U.S. 972 (1993); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1372-74 (9th Cir. 1992) (holding that a ban on abortion at all stages of pregnancy, subject to limited exceptions, is unconstitutional), *cert. denied*, 506 U.S. 1011 (1992); *McCormack v. Hiedeman*, __ F. Supp. 2d __, 2013 WL 823318, *20 (D. Idaho Mar. 6, 2013) (holding that a ban on abortion after 20 weeks, subject to limited exceptions, is unconstitutional).[3]

The Act expressly bans abortion prior to viability. *See* Act § 1304(a). Accordingly, it violates the Due Process Clause of the Fourteenth Amendment. *See Casey*, 505 U.S. at 846; *Roe*, 410 U.S. at 164-65.

### B. The Supreme Court's Decisions Prohibiting Bans on Previability Abortions Command Continued Adherence Under the Doctrine of Stare Decisis and May Not be Overruled by a Lower Federal Court.

The Supreme Court's decisions prohibiting bans on previability abortion care command continued adherence under the doctrine of *stare decisis*. *See Casey*, 505 U.S. at 854-70. As the Supreme Court explained in *Casey*:

> An entire generation has come of age free to assume *Roe*'s concept of liberty in defining the capacity of women to act in society, and to make reproductive decisions; no erosion of principle going to liberty or personal autonomy has left

---

[3] Last year, a district court in the District of Arizona, acting contrary to precedent, upheld a ban on abortion after 20 weeks in the wake of a constitutional challenge. *See Isaacson v. Horne*, 884 F. Supp. 2d 961, 971 (D. Ariz. 2012). Its decision, however, was immediately stayed by the U.S. Court of Appeals for the Ninth Circuit, which granted the plaintiffs' emergency motion for injunctive relief pending appeal. *Isaacson v. Horne*, 2012 WL 3126829 (9th Cir. Aug. 1, 2012). As a result, the abortion ban is not in effect.

> *Roe*'s central holding a doctrinal remnant; *Roe* portends no developments at odds
> with other precedent for the analysis of personal liberty; and no changes of fact
> have rendered viability more or less appropriate as the point at which the balance
> of interest tips.

*Id.* at 860-61. These conclusions apply with equal force today, and demand continued adherence

to the central holding of *Roe*, that viability marks the earliest point at which a state may ban

abortion care. See *id.* at 860. Furthermore, the Court noted that *stare decisis* is especially

important when "the Court decides a case in such a way as to resolve the sort of intensely

divisive controversy reflected in *Roe*." *Id.* at 866. In such a case, the Court's decision "calls the

contending sides of a national controversy to end their national division by accepting a common

mandate rooted in the Constitution." *Id.* at 867. Such a case is rare, and "requires an equally

rare precedential force to counter the inevitable efforts to overturn it and thwart its

implementation." *Id.*

Even if this Court were to conclude that sufficient grounds exist to overturn *Roe* and

*Casey*, it is not free to deviate from their holdings. Only the Supreme Court may overrule one of

its precedents; it is beyond the power of the lower federal courts to do so. *See United States v.*

*Hatter*, 532 U.S. 557, 567 (2001); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *Rodriguez de*

*Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989). In *Rodriguez de Quijas*, for

example, the Supreme Court decided to overrule one of its prior cases but explained that it would

have been error for a lower court to have done so. The Court stated: "We do not suggest that the

Court of Appeals on its own authority should have taken the step of renouncing [the prior case].

If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected

in some other line of decisions, the Court of Appeals should follow the case which directly

controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de*

*Quijas*, 490 U.S. at 484; *accord Hatter*, 532 U.S. at 567; *State Oil Co.*, 522 U.S. at 20.

Thus, *Roe* and *Casey* constitute controlling authority in this case, and, for the reasons set forth above, they require that the Act be invalidated. *See supra* at 4-6.

**III.   Plaintiffs and Their Patients Will Suffer Irreparable Harm if the Act Takes Effect.**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010) (quotation omitted). Here, both Plaintiffs and their patients will suffer irreparable harm in the absence of a preliminary injunction.

It is well-settled that the inability to exercise a constitutional right constitutes irreparable harm. *See Planned Parenthood of Minn., Inc. v. Citizens for Cmty. Action*, 558 F.2d 861, 867 (8th Cir. 1977) ("Planned Parenthood's showing that the ordinance interfered with the exercise of its constitutional rights and the rights of its patients supports a finding of irreparable injury.") (citations omitted); *accord Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Enforcement of the Act would deny roughly 20% of Arkansas women seeking constitutionally-protected, previability abortion care their right to access that care. *See supra* at 1. That constitutes irreparable harm. *See Planned Parenthood of Minn., Inc.*, 558 F.2d at 867.

In addition to the constitutional deprivation, those women will also be harmed by the physical and emotional consequences of being forced to remain pregnant against their will. That harm is likewise irreparable. *See Roe v. Crawford*, 396 F. Supp. 2d 1041, 1043-44 (W.D. Mo. 2005) (granting an inmate a preliminary injunction requiring prison officials to transport her to a medical facility for abortion care), *stay of injunction denied*, 546 U.S. 959 (2005).

Furthermore, Plaintiffs will suffer a loss of goodwill from their patients if they are forced

to cease providing desired medical services.  The Eighth Circuit has repeatedly held that such a loss of goodwill constitutes irreparable harm.  *See Planned Parenthood of Minn., Inc.*, 558 F.2d at 867 ("Planned Parenthood's goodwill was imperiled by the prospect of having to interrupt its services."); *accord Rogers Grp., Inc.*, 629 F.3d at 789-90 (citations omitted).  Plaintiffs' professional integrity will also be irreparably harmed by Plaintiffs' inability to act, based on their good-faith medical judgment, in the best interests of their patients.

IV.     **The Balance of Equities Tips in Plaintiffs' Favor.**

Here, the balance of equities tips decidedly in Plaintiffs' favor.  In the absence of a preliminary injunction, the Act would force Plaintiffs to cease providing constitutionally-protected abortion care, and would force their patients to continue unwanted pregnancies.  *See* Act § 1304.  On the other hand, if the Court grants a preliminary injunction, Defendants would suffer no harm.  The injunction would merely preserve the *status quo* that has existed during the forty years since the Supreme Court's decision in *Roe. See supra* at 4-8.

V.     **A Preliminary Injunction Would Serve the Public Interest.**

Finally, the grant of a preliminary injunction would serve the public interest.  It is axiomatic that the public interest is served by upholding the Constitution and preventing the enforcement of unconstitutional laws.  *See, e.g., Traditionalist Am. Knights of the Ku Klux Klan v. City of Desloge, Mo.*, ___ F. Supp. 2d ___, 2012 WL 6726392, *9 (E.D. Mo. Dec. 27, 2012); *Planned Parenthood of Minn., N.D., S.D. v. Daugaard*, 799 F. Supp. 2d 1048, 1077 (D.S.D. 2011); *Doctor John's, Inc. v. City of Sioux City, Iowa*, 305 F. Supp. 2d 1022, 1042 (N.D. Iowa 2004).  Because the Act is unconstitutional, the public interest would be served by an injunction against it.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their

9

motion for a preliminary injunction and enjoin Defendants and successors in office from enforcing any provision of the Act during the pendency of this litigation.

Dated:  April 16, 2013

Bettina Brownstein (85019)
Bettina E. Brownstein Law Firm
904 West 2nd Street, Ste. 2
Little Rock, AR 72201
Cooperating Attorney, ACLU of Arkansas
Phone: (501) 920-1764
Email: bettinabrownstein@gmail.com

Susan Talcott Camp*
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004-2400
Phone: (212) 549-2633
Email: tcamp@aclu.org

Stephanie Toti*
Senior Staff Attorney
Center for Reproductive Rights
120 Wall Street, 14th Floor
New York, NY 10005
Phone: (917) 637-3684
Email: stoti@reprorights.org

Holly Dickson
Legal Director
Arkansas Civil Liberties Union Foundation
904 West 2nd Street
Little Rock, Arkansas 72201
Phone: (501) 374-2660
Email: holly@acluarkansas.org

*ATTORNEYS FOR PLAINTIFFS*

*Application for admission *pro hac vice*
pending

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

LOUIS JERRY EDWARDS, M.D., et al., )
                                   )
Plaintiffs,                        )    Case No. _4:13cv0224 Jmm_
                                   )
v.                                 )
                                   )
JOSEPH M. BECK, M.D., et al.,      )
                                   )
Defendants.                        )

## DECLARATION OF LOUIS JERRY EDWARDS, M.D.

**LOUIS JERRY EDWARDS, M.D., hereby declares the following statements:**

1.      I am a board-certified obstetrician-gynecologist licensed to practice medicine in Arkansas.

2.      I currently serve as an associate physician at Little Rock Family Planning Services, Inc., in Little Rock, Arkansas, where I provide and/or supervise others in providing a broad range of reproductive health care services, including physical exams, testing for HIV and sexually- transmitted infections, screening for cervical and breast cancer, pregnancy testing and options education, contraception and contraceptive education, and abortion care.

3.      The health care services that I provide at Little Rock Family Planning Services, Inc., include abortion care at and after 12 weeks of pregnancy.

4.      If Act 301 takes effect, I would be forced to stop providing abortion care to my patients at and after 12 weeks of pregnancy.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 15th day of April, 2013.

_____
Louis Jerry Edwards, M.D.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

LOUIS JERRY EDWARDS, M.D., et al.,     )
                                          )

Plaintiffs,              )   Case No. *4:13cv0 224Jmm*
                                          )

v.                             )
                                          )

JOSEPH M. BECK, M.D., et al.,        )
                                          )

Defendants.           )

## DECLARATION OF TOM TVEDTEN, M.D.

**TOM TVEDTEN, M.D., hereby declares the following statements:**

1.     I am a physician licensed to practice medicine in Arkansas.

2.     I currently serve as the Medical Director of Little Rock Family Planning Services, Inc., in Little Rock, Arkansas, where I provide and/or supervise others in providing a broad range of reproductive health care services, including physical exams, testing for HIV and sexually- transmitted infections, screening for cervical and breast cancer, pregnancy testing and options education, contraception and contraceptive education, and abortion care.

3.     The health care services that I provide at Little Rock Family Planning Services, Inc., include abortion care at and after 12 weeks of pregnancy.

4.     If Act 301 takes effect, I would be forced to stop providing abortion care to my patients at and after 12 weeks of pregnancy.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 15th day of April, 2013.

_____
Tom Tvedten, M.D.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this _16_ day of April, 2013, Willaim H. Trice, III was

personally served with a copy of the foregoing Plaintiffs' Memorandum of Law in Support of

Motion for Preliminary Injunction.

Bettina E. Brownstein

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

LOUIS JERRY EDWARDS, M.D., et al.,    )
    )
Plaintiffs,    )   Case No. _4:13cv0224 JMM_
    )
v.    )
JOSEPH M. BECK, M.D., et al.,    )
    )
Defendants.    )
    )

## DECLARATION OF JANET CATHEY, M.D.

**JANET CATHEY, M.D., hereby declares the following statements:**

I make this declaration in support of Plaintiffs' Motion for Preliminary Injunction. On the basis of my education, training, and experience, as described below, I am fully qualified to render the expert opinions contained in this declaration.

1.    I am a medical doctor who resides in Arkansas and who has been licensed to practice in Arkansas since 1982. I graduated Phi Beta Kappa from the University of Arkansas in 1978 with a BS in zoology. I obtained my medical degree from the University of Arkansas for Medical Sciences in 1982 and completed a residency in obstetrics and gynecology (OBGYN) in 1986.

2.    I am board certified in OBGYN and have been a Diplomat of the American Board of Obstetrics & Gynecology since 1988. I have been a Fellow of the American College of OBGYN since 1988. I am also a member of the American Medical Association, the Arkansas Medical Society, the Pulaski County Medical Society, and the Little Rock GYN Society. I began private practice in 1986, offering my patients a full range of OBGYN services.

3.      Viability is the point in pregnancy at which there is a reasonable likelihood of sustained fetal survival outside the uterus.  At twelve (12) weeks of pregnancy, a fetus cannot in any circumstance survive outside the uterus. Thus, a fetus 12 weeks is not and cannot be viable.

4.      While the viability determination varies on an individual basis and can only be made by a physician, viability generally is not possible until at least 24 weeks.

5.      In a normally-progressing pregnancy, fetal cardiac activity is detectible by abdominal ultrasound at 12 weeks.  The detection of fetal cardiac activity at 12 weeks does not indicate viability.


I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


Executed this  //  day of April, 2013.

*Janet Cathey, M.D.*
Janet Cathey, M.D.