**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LOUIS JERRY EDWARDS, M.D., on behalf of himself and his patients, ET AL. | * * * * | |
| Plaintiffs | * * | |
| | * | NO: 4:13CV00224  SWW |
| V. | * * | |
| JOSEPH M. BECK, M.D., President of the Arkansas State Medical Board, and his successors in office, in their official capacities, ET AL. | * * * * | |
| Defendants | * * * * | |

**<u>ORDER</u>**

Plaintiffs Louis Jerry Edwards and Tom Tvedten, physicians who provide abortion services at Little Rock Family Planning Services, Inc., bring this action under 42 U.S.C. § 1983 against members of the Arkansas State Medical Board (the "Board"), sued in their official capacities.  Plaintiffs challenge the constitutionality of Arkansas Act 301 of the 2013 Regular Session of the 89th General Assembly of Arkansas, titled the Arkansas Human Heartbeat Protection Act ( "Act 301" or "Act."), and they seek declaratory and injunctive relief to prevent its enforcement.   Along with the complaint, Plaintiffs filed a motion for a preliminary injunction that would enjoin the Board from enforcing any provision of the Act pending resolution of this lawsuit (ECF Nos. 4, 5).   The State filed a response opposing preliminary injunctive relief (ECF Nos. 18, 19), and Plaintiffs filed a reply (ECF No. 30).

Following a hearing held on May 17, 2013, the Court stated findings of fact and conclusions of law from the bench and granted Plaintiffs' motion for a preliminary injunction. In  accordance with Rule 52(a)(2) of the Federal Rules of Civil Procedure, the Court now reaffirms the findings of fact and conclusions of law stated from the bench.

## I.

Act 301 amends Arkansas law governing abortions, and it will become effective on August 16, 2013.[1]  *See* Act 301, § 1 (to be codified at Ark. Code Ann. §§ 20-16-1301 through 1307).   The Act governs the conduct of physicians authorized under Arkansas law to perform abortions,[2] and it provides that such a person "shall not perform an abortion on a pregnant woman before the person tests the pregnant woman to determine whether the fetus . . . possesses

---

[1] The Arkansas Constitution provides that the people have ninety days after adjournment of a legislative session to file a referendum petition and that a legislative act will not become effective during that period.   *See* Ark. Const. amend. 7; *see also Fulkerson v. Refunding Bd. of Arkansas*, 201 Ark. 957, 147 S.W.2d 980 (1941).  However, if a legislative act is necessary for the "preservation of the public peace, health and safety that a measure shall become effective without delay, and such necessity shall be stated" in the act, the act becomes effective immediately and remains in effect until there is an adverse vote upon referral.  *See* Ark. Const. amend. 7.

Because Act 301 contains no emergency clause and no specified effective date, it will become effective on the ninety-first day after adjournment *sine die* of the 2013 General Assembly, which is May 17, 2013.   *See* House Concurrent Resolution 1003, 89th General Assembly, Reg. Session, § (e).   The ninety-first day after May 17, 2013 is August 16, 2013.

[2]The term "physician" does not appear in Act 301.  Instead, the Act refers to "a person authorized to perform abortions under Arkansas law."  Act 301, §§ 20-16-1303, 1304. However, Arkansas Department of Health regulations provide: "Only physicians who are currently licensed to practice medicine in Arkansas may perform abortions."  Ark. Admin. Code 007.05.2-7.

a detectible heartbeat." Act 301, § 20-16-1303(a). The Act specifies that a physician "shall perform an abdominal ultrasound test necessary to detect a heartbeat of an unborn human individual according to standard medical practice, including the use of medical devices as determined by standard medical practice." *Id*., § 20-16-1303(b)(1).

If a fetal heartbeat is detected in the course of the mandatory test, the physician must inform the pregnant woman in writing (1) that the fetus she is carrying possesses a heartbeat; (2) the statistical probability of bringing the unborn individual to term based on the gestational age; and (3) that an abortion is prohibited if a heartbeat is detected and the gestational period is twelve weeks or more. *See id.*, § 20-16-1303(d). Additionally, the Act provides that the pregnant woman shall sign a form acknowledging that she has received the foregoing information. *See id.*, § 20-16-1303(e). Act 301 assigns the defendant Board several duties, including the tasks of adopting rules for fetal heartbeat testing and determining violations of the Act.

In addition to requiring heartbeat testing and informational disclosures, if applicable, before an abortion, Act 301 bans abortions where a fetal heartbeat is detected and the fetus has reached twelve weeks gestational age. Unless a pregnancy is the result of rape or incest, or an abortion is performed to save the life of the mother or in response to a medical emergency, a physician who performs an abortion "with the specific intent of causing or abetting the termination of the life of an unborn individual whose heartbeat has been detected . . . and is twelve (12) weeks or greater gestation" is subject to license revocation. Act 301, § 20-16-1303.

Finally, Arkansas law prohibits the abortion of a "viable fetus," unless necessary to preserve the life or health of the woman or the pregnancy is the result of rape or incest. See Ark.

Code Ann. 20-16-705.   Currently, Arkansas law defines a "viable fetus" as "a fetus which can live outside of the womb," Ark. Code Ann. § 20-16-702(3),  and provides that "a fetus shall be presumed not to be viable prior to the end of the twenty-fifth week of pregnancy."  Ark. Code Ann.  § 20-16-703.  Act 301, however, defines "viability" as "a medical condition that begins with a detectible heartbeat."  Act 301, § 20-16-1302(8).

Plaintiffs seek a declaratory judgment that Act 301 violates the Fourteenth Amendment of the United States Constitution, and they ask the Court to enjoin enforcement of the Act by way of preliminary and permanent injunctive relief.  Plaintiffs specifically challenge Act 301's ban on abortions starting at twelve weeks of pregnancy.

Along with the motion for a preliminary injunction, each plaintiff submitted a sworn declaration stating that the services he provides at Little Rock Family Planning Services include "abortion care at and after 12 weeks of pregnancy."  ECF No. 5 (Attach. Decl.).  Plaintiffs state that absent an injunction enjoining enforcement of Act 301, they will have no choice but to turn away patients who are in need of abortion services.   According to Plaintiffs, Act 301 presents them with an untenable choice: "to face license revocation for continuing to provide abortion care in accordance with their best medical judgment, or to stop providing the critical care their patients seek."   ECF No. , ¶ 19 (Compl.).

## II.

In determining whether to issue a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure, a court must consider four factors: (1) the threat of immediate irreparable harm to the movant; (2) the balance between this harm and the injury that granting the injunction will inflict on other litigants; (3) the probability that movant will succeed on the

merits; and (4) the public interest. *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981). A preliminary injunction is an extraordinary remedy, and the party seeking injunctive relief bears the burden of proving all the *Dataphase* factors. *See Watkins Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003)(citing *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987)).

**Likelihood of Success on the Merits**

Normally, a litigant seeking a preliminary injunction need only show a "fair chance" of succeeding on the merits. However, where a preliminary injunction is sought to enjoin implementation of a duly enacted state statute, a district court must make a threshold finding that the plaintiff is "likely to prevail on the merits," that there is a greater than fifty percent likelihood of prevailing on the merits. *See Planned Parenthood of Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732-733 (8th Cir. 2008)(en banc).

Plaintiffs contend that Act 301 is unconstitutional on its face because it bans abortions prior to viability. In 1973, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment guarantees a woman the right to choose whether to terminate a pregnancy. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. (1973). However, this right is not absolute and is balanced by the state's interest in protecting the woman's health and the potential life of the fetus. *Id*. at 162, 93 S.Ct. at 731. After the fetus becomes viable, the State's interest in protecting its potential life becomes compelling enough in some circumstances to outweigh the woman's right to seek an abortion. *See Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 845-846, 112 S.Ct. 2791, 2804 (1992). But before viability, "the State's interests are not strong enough to support a prohibition of abortion or the imposition of a

substantial obstacle to the woman's effective right to elect the procedure." *Id*. The State can impose regulations aimed at ensuring a thoughtful and informed choice, but only if such regulations do not unduly burden the right to choose. *Casey*, 505 U.S. at 872, 112 S.Ct. at 2818.

In *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 845-846, 112 S.Ct. 2791, 2804 (1992), the Supreme Court reaffirmed the fundamental holdings of *Roe v. Wade,* 410 U.S. 113, 93 S. Ct. 705 (1973)–including the standard that the line between a woman's interest in control over her destiny and body and the state's interest in promoting the life or potential life of the unborn is drawn at viability–"the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb, so that the independent existence of the second life can in reason and all fairness be the object of state protection . . . . " *Casey*, 505 U.S. at 870, 112 S.Ct. at 2817 (citing *Roe v. Wade*, 410 U.S., at 163, 93 S.Ct., at 731). The *Casey* Court noted that although the line of viability may come earlier with advances in neonatal care, the attainment of viability continues to serve as the critical factor.[3]

The Eighth Circuit has adopted the "undue-burden test" for facial challenges to abortion laws. *See Planned Parenthood v. Miller*, 63 F.3d, 1453, 1457-58 (8th Cir. 1995). Under that standard, an abortion law is unconstitutional on its face if "in a large fraction of the cases in

---

[3]The Supreme Court has also stressed that it is not the proper function of the legislature or the courts to place viability at a specific point in the gestation period: "The time when viability is achieved may vary with each pregnancy, and the determination of whether a particular fetus is viable is, and must be, a matter for the judgment of the responsible attending physician." *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 64-65, 96 S.Ct. 2831, 2839 (1976).

which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 845-846, 112 S.Ct. 2791, 2804 (1992); *see also Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1456–58 (8th Cir.1995).

With their motion for a preliminary injunction, Plaintiffs submitted the sworn declaration of Janet Cathey, M.D., who is board-certified in the speciality of obstetrics and gynecology ("OBGYN"). *See* ECF No. 5 (Attach. Decl.). Dr. Cathey testifies that she began private practice in 1986, and she offers her patients a full range of OBGYN services. Dr. Cathey's declaration states, in pertinent part, as follows:

> Viability is the point in pregnancy at which there is a reasonable likelihood of sustained fetal survival outside the uterus. At twelve (12) weeks of pregnancy, a fetus cannot in any circumstance survive outside the uterus. Thus a fetus 12 weeks is not and cannot be viable.
>
> While the viability determination varies on an individual basis and can only be made by a physician, viability is generally not possible until at least 24 weeks.
>
> In a normally-progressing pregnancy, fetal cardiac activity is detectible by abdominal ultrasound at 12 weeks. The detection of fetal cardiac activity at 12 weeks does not indicate viability.

*Id*., ¶¶ 3-5(internal paragraph numbers omitted). In addition to Dr. Cathey's testimony, Plaintiffs point to Arkansas Department of Health statistics, published on the Department's public website, reporting that 20% of abortions performed in Arkansas in 2011 took place at and after 12 weeks gestation.[4]

_____

[4]According to the statistics cited by Plaintiffs, 4,033 abortions took place in Arkansas in 2011, and 815 of those abortions occurred at or after 12 weeks gestation. *See* http://www.healthy.arkansas.gov/programsServices/healthStatistics/Documents/abortion/2011Ito p.pdf(accessed May 20, 2013).

The parties presented no additional evidence during the May 17 hearing, and the State offered no competing evidence challenging Dr. Cathey's testimony or the statistical data referenced in Plaintiffs' brief.   However, the State argued that Plaintiffs failed to show the percentage of women who would not fall within one of the exceptions to Act 301's  abortion ban. According to the State, under the Supreme Court's decision in *Gonzales v. Carhart*, 550 U.S. 124, 127 S. Ct. 1610 (2007), Plaintiffs can attack the constitutionality of Act 301 only with an "as-applied"[5] challenge.  The Court disagrees.

In this case, Plaintiffs challenge the constitutionality of a law that, with limited exceptions, prohibits all abortions, regardless of the method employed, where the pregnancy has progressed to twelve weeks and a fetal heartbeat is detected.  In *Gonzales*, however, the Supreme

---

[5]Plaintiffs challenge Act 301 on its face, not as applied to a specific party or circumstance. "An as-applied challenge consists of a challenge to a statute's application only as-applied to the party before the court." *Republican Party of Minn., Third Congressional Dist. v. Klobuchar,* 381 F.3d 785, 790 (8th Cir. 2004)(citing *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 758–59, 108 S.Ct. 2138 (1988)).  "If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable."  *See id*.

Under the standard generally applicable to facial challenges, the proponent must establish that "no set of circumstances exists under which the [statute] would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).  However, the Eighth Circuit has joined every other circuit which has decided the issue by adopting the "undue-burden" standard enunciated by the plurality opinion in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 845-846, 112 S.Ct. 2791, 2804 (1992), as controlling precedent in abortion cases.  *See Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 734 n.8 (8th Cir. 2008)(citing *Planned Parenthood, Sioux Falls Clinic v. Miller*, 63 F.3d 1452, 1456 n. 7 (8th Cir.1995)(recognizing the plurality opinion "as the Supreme Court's definitive statement of the constitutional law on abortion").

Court upheld a federal abortion ban that prohibited only one type of abortion procedure–referred to in the Court's decision as an "intact D & E" abortion. The plaintiffs in *Gonzales* challenged the method ban on several grounds, including that it lacked an exception allowing the banned procedure where necessary to preserve the health of the mother. Noting medical and scientific evidence documenting significant disagreement and uncertainty as to whether the method ban created a significant health risk, the Supreme Court rejected the plaintiffs' facial attack. The Court further opined that the proper means to consider a constitutional challenge in the context of medical uncertainty was an "as-applied" challenge, showing that in discrete and well-defined instances, the prohibited abortion method would be necessary for the health of the mother. *See Gonzales*, 550 U.S. at 167, 127 S. Ct. at 1638. The Court noted: "In an as-applied challenge, the nature of the medical risk can be better quantified and balanced than in a facial attack." *Gonzales*, 550 U.S. at 167, 127 S. Ct. at 1639.

According to Plaintiffs, *Gonzales* requires that Plaintiffs come forward with case-specific examples showing that Act 301 would deny a pre-viability abortion. However, the State's own statistics show that 20% of abortions in Arkansas occur at or after twelve weeks, and the Court will not presume that in all cases, women in that category could obtain an abortion under one of Act 301's narrow exceptions, which are limited to cases in which the pregnancy is the result of rape or incest, an abortion is performed to save the life of the mother, or in cases of a medical emergency.[6] Furthermore, an abortion law cannot pass muster on the ground that it would

---

[6]Act 301 defines "medical emergency" as a condition in which an abortion is necessary:

(A) To preserve the life of the pregnant woman whose life is endangered by a physical disorder, physical illness, or physical injury, including a life-endangering physical condition caused by or arising from the pregnancy itself, or when

impose no burden to some or even the majority of women who would seek an abortion.  The

*Casey* Court noted:

> The analysis does not end with the one percent of women upon whom the statute operates; it begins there. Legislation is measured for consistency with the Constitution  by  its impact on those whose conduct it affects. For example, we would not say that a law which requires a newspaper to print a candidate's reply to an unfavorable editorial is valid on its face because most newspapers would adopt the policy even absent the law.  The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.

*Casey*, 505 U.S. at 894, 112 S.Ct. at 2829 (1992).

Plaintiffs have shown that Act 301 more than likely prohibits pre-viability abortions in a large fraction of relevant cases.  Act 301 equates fetal viability with a 12-week gestational age and a fetal heartbeat, and it bans abortions according to that definition.  However, controlling Supreme Court precedent, which this Court has a duty to follow, provides that viability is "the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb, so that the independent existence of the second life can in reason and all fairness be the object of state protection . . . ."  *Casey*, 505 U.S. at 870, 112 S.Ct. at 2817 (citing *Roe v. Wade*, 410 U.S., at 163, 93 S.Ct., at 731).   The Court finds that Plaintiffs have carried their burden to show that they are likely to prevail with their claim that Act 301's prohibition of abortions at

---

continuation of the pregnancy will create a serious risk of substantial and irreversible impairment of a major bodily function of the pregnant woman; or

(B) Due to the existence of a highly lethal fetal disorder as defined by the Arkansas State Medical Board.

Act 301, § 1 (to be codified at Ark. Code Ann. § 20-16-1302(6)).

twelve weeks gestation, when a fetal heartbeat is detected, impermissibly infringes a woman's

Fourteenth Amendment right to chose to terminate a pregnancy before viability.

**Threat of Irreparable Harm**

The Court finds that Plaintiffs have shown that they and their patients will be subjected to

the threat of irreparable injury in the absence of a preliminary injunction.  Without an injunction

enjoining enforcement of Act 301, Plaintiffs will face license revocation for performing pre-

viability abortions.  *See Planned Parenthood of Minnesota, Inc. v. Citizens for Community*

*Action*, 558 F.2d 861, 867 (8th Cir. 1977)("Planned Parenthood's showing that the ordinance

interfered with the exercise of its constitutional rights and the rights of its patients supports a

finding of irreparable injury.").  Additionally, because Act 301 would prohibit abortions that

come within the pre-viability time frame, Plaintiffs' patients face an imminent threat to their

ability to exercise the constitutional right to choose to terminate a pregnancy.

**Balance of Harm**

Considering the substantial impact that Act 301 would have on a woman's right to

choose, the balance of hardships tips in Plaintiffs' favor.  Maintaining the status quo pending

litigation will not deprive the State of its ability to enforce current laws aimed at protecting

women's health and the potential life of the fetus.  Act 301 provides that if the law is held

unconstitutional, the effective date will be tolled until the law is upheld, and the State's current

laws governing abortions will remain in effect.  *See* Act 301, § 2-16-1307.

**Public Interest**

Whether the grant of a preliminary injunction furthers the public interest in this case is

11

largely dependent on the likelihood of success on the merits because the protection of constitutional rights is always in the public interest. *See Phelps–Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir.2007). Accordingly, the Court finds that the public interest is best served by granting a preliminary injunction.

## III.

Having determined that Plaintiffs have met their burden to show that each requisite for a preliminary injunction is met, the Court will grant Plaintiffs' motion. The Court notes that Plaintiffs seek to enjoin the enforcement of all provisions of Act 301, but Plaintiff's complaint indicates that their constitutional challenge is limited to the Act's abortion ban and does not seek invalidation of the provisions requiring fetal heartbeat testing and informational disclosures. However, for reasons stated at the preliminary injunction hearing, the Court will grant a preliminary injunction enjoining enforcement of the entire Act, and the Court will entertain the parties' arguments regarding severability.

IT IS THEREFORE ORDERED that Plaintiffs' motion for a preliminary injunction (ECF No. docket entry #4) is GRANTED. Defendants are enjoined from enforcing or otherwise implementing Arkansas Act 301 of the 2013 Regular Session of the 89th General Assembly of Arkansas, titled the Arkansas Human Heartbeat Protection Act.

IT IS FURTHER ORDERED that Plaintiffs have up to and including May 28, 2013 in which to file a response to the motion to intervene submitted by Concepts of Truth, Inc. (ECF Nos. 20, 21, 22).

IT IS SO ORDERED THIS 23RD DAY OF MAY, 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

12