**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| LOUIS JERRY EDWARDS, M.D., on behalf of himself and his patients, ET AL. | * * * * * | |
| Plaintiffs | * * | |
| V. | * * | NO: 4:13CV00224  SWW |
| JOSEPH M. BECK, M.D., President of the Arkansas State Medical Board, and his successors in office, in their official capacities, ET AL. | * * * * * * | |
| Defendants | * | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Louis Jerry Edwards and Tom Tvedten, physicians who provide abortion services at Little Rock Family Planning Services, Inc., bring this action under 42 U.S.C. § 1983 against members of the Arkansas State Medical Board (the "Board"), sued in their official capacities.  Plaintiffs challenge the constitutionality of Arkansas Act 301 of the 2013 Regular Session of the 89th General Assembly of Arkansas, titled the Arkansas Human Heartbeat Protection Act,  now codified at Ark. Code Ann. §§ 20-16-1301 through 1307.   Before the Court are the State's motion for partial summary judgment (ECF Nos. 40, 41, 42);  Plaintiffs' response in opposition and cross-motion for summary judgment (ECF Nos. 48, 49); the State's response in opposition to Plaintiffs' cross-motion (ECF No. 52); the State's reply in support of the State's motion (ECF No. 51);  and Plaintiffs' reply in support of their cross-motion (ECF No. 55).  Also before the Court is an amicus brief filed by Concepts of Truth, Inc. (ECF No. 53), supporting the

State's motion for partial summary judgment.  After careful consideration, and for reasons that follow, the State's motion for partial summary judgment is granted, and Plaintiffs' cross-motion for summary judgment is granted in part and denied in part.

## I.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must come forward with 'specific facts showing a genuine issue for trial. *Id*. at 587.  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

Unless a pregnancy is the result of rape or incest or an abortion is necessary because of a

medical emergency,[1] Act 301 imposes regulations on the performance of abortions in Arkansas, and it contains three operative provisions: a heartbeat testing requirement; a disclosure requirement; and a ban on abortions when a fetal heartbeat is detected and the fetus has reached twelve weeks' gestation.

The heartbeat testing requirement provides that a physician authorized under Arkansas law to perform abortions,[2] "shall not perform an abortion on a pregnant woman before the [physician] tests the pregnant woman to determine whether the fetus . . . possesses a detectible heartbeat." Ark. Code Ann. § 20-16-1303(a). The Act further provides that the physician "shall perform an abdominal ultrasound test necessary to detect a heartbeat of an unborn human individual according to standard medical practice, including the use of medical devices as determined by standard medical practice." Ark. Code Ann. § 20-16-1303(b)(1). Act 301

---

[1] The Act defines the term "medical emergency" as follows:

"Medical emergency" means a condition in which an abortion is necessary:

(A) To preserve the life of the pregnant woman whose life is endangered by a physical disorder, physical illness, or physical injury, including a life-endangering physical condition caused by or arising from the pregnancy itself, or when continuation of the pregnancy will create a serious risk of substantial and irreversible impairment of a major bodily function of the pregnant woman; or

(B) Due to the existence of a highly lethal fetal disorder as defined by the Arkansas State Medical Board;

Ark. Code Ann. § 20-16-1302(6).

[2] The term "physician" does not appear in Act 301. Instead, the Act refers to "a person authorized to perform abortions under Arkansas law." Ark. Code Ann. §§ 20-16-1303, 1304. However, Arkansas Department of Health regulations provide: "Only physicians who are currently licensed to practice medicine in Arkansas may perform abortions." Ark. Admin. Code 007.05.2-7.

requires that the aforementioned abdominal ultrasound test "shall be approved by the Arkansas State Medical Board[,]" Ark. Code Ann. § 20-16-1303(b)(2), and the Board is charged with adopting rules "based on standard medical practice for testing for the fetal heartbeat of an unborn individual."  Ark. Code Ann. § 20-16-1303(c)(1)(A)(I).

The disclosure requirement provides that if a fetal heartbeat is detected in the course of the mandatory heartbeat test, the physician must inform the pregnant woman, in writing, of the following:  (1) the fetus she is carrying possesses a heartbeat; (2) the statistical probability of bringing the fetus to term based on the fetus's gestational age; and (3) that an abortion is prohibited, under Ark. Code Ann. § 20-16-1304, if a heartbeat is detected and the gestational period is twelve weeks or more.  *See* Ark. Code Ann. § 20-16-1303(d).  The Act further requires that the pregnant woman shall sign a form acknowledging that she has received the foregoing information.  *See* Ark. Code Ann. § 20-16-1303(e).

Finally, Act 301 bans an abortion where a fetal heartbeat is detected and the fetus has reached twelve weeks or greater gestational age.  *See* Ark. Code Ann. § 20-16-1304(a).  Unless a pregnancy is the result of rape or incest or an abortion is performed in response to a medical emergency, a physician who performs an abortion "with the specific intent of causing or abetting the termination of the life of an unborn individual whose heartbeat has been detected . . . and is twelve (12) weeks or greater gestation" is subject to license revocation, and the Board is charged with determining violations of the twelve-week abortion ban.  *See* Ark. Code Ann. § 20-16-1304(b).

**III**.

Plaintiffs are physicians who provide pre-viability abortions in Arkansas at and after

twelve weeks' gestation, and they filed this lawsuit charging that Act 301 is facially

unconstitutional because it bans abortions prior to fetal viability.  Along with the complaint,

Plaintiffs filed a motion seeking a  preliminary injunction enjoining the Act's enforcement

pending a final decision on the merits.   Following a hearing held May 17, 2013, the Court

determined that Plaintiffs had demonstrated each requisite for preliminary injunctive relief,

including that they were likely to prevail with the claim that the twelve-week abortion ban

violates the Constitution.   The Court enjoined the State from enforcing Act 301,  in its entirety,

pending the resolution of this lawsuit.  However, the Court notified the parties that in deciding

the scope of a permanent injunction, it  would consider whether to sever the impermissible

twelve-week abortion ban from the heartbeat testing and disclosure measures and leave those

portions of the statute intact.

On May 31, 2013, the State filed a motion for partial summary judgment, asserting that

the heartbeat testing and disclosure provisions are constitutionally valid and severable from the

twelve-week abortion ban.  Plaintiffs responded with a cross-motion for summary judgment,

seeking a permanent injunction barring the enforcement of Act 301 in its entirety.

**IV.**

The Court turns first to the twelve-week abortion ban.   Plaintiffs contend that the ban is

*per se* unconstitutional and must be permanently enjoined.   The State contends that Act 301 is

constitutional in its entirety, but "recognizes the Court's determination that the prohibition of

abortion after twelve weeks' gestation and the detection of a fetal heartbeat (with enumerated

exceptions) has been and will be invalidated by the Court."  ECF No. 42, at 6.

In 1973, the Supreme Court held that the Due Process Clause of the Fourteenth

Amendment guarantees a woman the right to choose whether to terminate a pregnancy.   *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. (1973).   However, this right is not absolute and is balanced by the State's interest in protecting the woman's health and the potential life of the fetus.   *Id*. at 162, 93 S.Ct. at 731.   After the fetus becomes viable, the State's interest in protecting its potential life becomes compelling enough in some circumstances to outweigh the woman's right to seek an abortion.   *See Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 845-846, 112 S.Ct. 2791, 2804 (1992).   But before viability, "the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure."   *Id*.

In *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 845-846, 112 S.Ct. 2791, 2804 (1992), the Supreme Court reaffirmed the fundamental holdings of  *Roe v. Wade,* 410 U.S. 113, 93 S. Ct. 705 (1973), including that the line between a woman's interest in control over her destiny and body and the State's interest in promoting the life or potential life of the unborn is drawn at viability: "the time at which there is a realistic possibility of maintaining and nourishing a life outside the womb, so that the independent existence of the second life can in reason and all fairness be the object of state protection . . . . " *Casey*, 505 U.S. at 870, 112 S.Ct. at 2817 (citing *Roe v. Wade*, 410 U.S., at 163, 93 S.Ct., at 731).   The *Casey* Court noted that although the line of viability may come earlier with advances in neonatal care, the attainment of viability continues to serve as the critical factor.

The Supreme Court has also stressed that it is not the proper function of the legislature or the courts to place viability at a specific point in the gestation period:   "The time when viability is achieved may vary with each pregnancy, and the determination of whether a particular fetus is

viable is, and must be, a matter for the judgment of the responsible attending physician."

*Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 64-65, 96 S.Ct. 2831, 2839

(1976).

Plaintiffs submit the sworn declaration of Janet Cathey, M.D., who is board-certified in

the speciality of obstetrics and gynecology ("OBGYN").  *See* Cathey Dec., ECF No. 48-2.  Dr.

Cathey testifies that she began private practice in 1986, and she offers patients a full range of

OBGYN services.  Dr. Cathey's declaration states, in pertinent part, as follows:

> Viability is the point in pregnancy at which there is a reasonable likelihood of
> sustained fetal survival outside the uterus.  At twelve (12) weeks of pregnancy, a
> fetus cannot in any circumstance survive outside the uterus.  Thus a fetus at 12
> weeks is not and cannot be viable.
>
> While the viability determination varies on  an individual basis  and can only be
> made by a physician, viability generally is not possible until at least 24 weeks.
>
> Although in a normally-progressing pregnancy, fetal cardiac activity can be detected
> via vaginal ultrasound at  approximately 6 weeks, it cannot be detected via
> abdominal ultrasound until several weeks later.
>
> In a normally-progressing pregnancy, fetal cardiac activity can be detected via
> abdominal ultrasound at 12 weeks.  The detection of  fetal cardiac activity at 12
> weeks does not indicate viability.
>
> Prior to performing an abortion, a physician must determine the gestational age of
> the pregnancy.  Early in pregnancy, abdominal ultrasound does not produce images
> that are sufficiently clear to permit accurate gestational dating.  As a result, some
> other method of gestational dating, such as vaginal ultrasound, must be used.

*Id.*, ¶¶ 3-8 (internal paragraph numbers omitted).   In addition to Dr. Cathey's testimony,

Plaintiffs point to Arkansas Department of Health statistics, published on the Department's

public website, reporting that in 2011, twenty percent of abortions performed in Arkansas took

place at and after twelve weeks' gestation.[3]

Unless a pregnancy is the result of rape or incest or an abortion is necessary because of a medical emergency, Act 301 bans abortions where the pregnancy has progressed to twelve weeks and a fetal heartbeat is detected.  Dr. Cathey's undisputed testimony shows that in a normally-progressing pregnancy, a fetal heartbeat can be detected at twelve weeks' gestation, and the State's own statistics show that twenty percent of abortions in Arkansas occur at or after twelve weeks.   The State presents no evidence that a fetus can live outside the mother's womb at twelve weeks, and the State does not dispute Dr. Cathey's testimony that "a fetus at [twelve] weeks is not and cannot be viable" and that viability generally is not possible until at least twenty-four weeks.

Given Plaintiffs' uncontroverted evidence, the Court finds as a matter of law that the twelve-week abortion ban included in Act 301 prohibits pre-viability abortions and thus impermissibly infringes a woman's Fourteenth Amendment right to elect to terminate a pregnancy before viability.   Plaintiffs have demonstrated that they will suffer irreparable harm unless the State is permanently enjoined from enforcing the twelve-week abortion ban set forth under Ark. Code Ann. § 20-16-1304(a).   Without a permanent injunction, Plaintiffs will face license revocation for performing pre-viability abortions, and the twelve-week ban will prevent a woman's constitutional right to elect to have an abortion before viability.

In addition, the following  provisions of Act 301, which  clearly serve as integral components of the twelve-week ban, must be permanently enjoined:  (1) the requirement that the

---

[3]According to the statistics cited by Plaintiffs, 4,033 abortions took place in Arkansas in 2011, and 815 of those abortions occurred at or after 12 weeks gestation. *See* http://www.healthy.arkansas.gov/programsServices/healthStatistics/Documents/abortion/2011Itop.pdf(accessed May 20, 2013).

physician inform the pregnant woman about the twelve-week abortion ban, *see* Ark. Code Ann. § 20-15-1303(d)(3), and (2) the mandate that a violation of the twelve-week ban, as determined by the Board, shall result in the revocation of the offending physician's medical license. *See* Ark. Code Ann. § 20-16-1304(b).

The Court turns to the remaining heartbeat testing and disclosure provisions. With the elimination of the twelve-week ban and those portions of the Act that incorporate the ban, the heartbeat testing provision requires that before a physician may perform an abortion, he or she must conduct an abdominal ultrasound examination to determine whether the fetus possesses a detectible heartbeat. *See* Ark. Code Ann. § 20-16-1303(b)(1). In the event that a fetal heartbeat is detected during the abdominal ultrasound test, the disclosure provision requires that the physician inform the pregnant woman, in writing, (1) that the fetus possesses a heartbeat and (2) the statistical probability of bringing the fetus to term based on the fetus's gestational age. *See* Ark. Code Ann. § 20-16-1303(d)(1)-(2).

The State maintains that the heartbeat testing and disclosure provisions are severable from the twelve-week ban and should remain intact as constitutional regulations aimed at furthering the State's legitimate interest in protecting potential human life. Plaintiffs argue that the remaining heartbeat testing and disclosure provisions cannot be separated from the impermissible twelve-week ban because they "operate to serve the ban and for no other purpose." ECF No. 48-3. Importantly, Plaintiffs do not argue that the heartbeat testing and disclosure measures impose an undue burden on a woman's right to choose or that they require the disclosure of information that is untruthful, misleading or not relevant to the decision to have an abortion.

Generally speaking, when confronting a constitutional flaw in a statute, a federal court must "try not to nullify more of a legislature's work than is necessary." *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320, 329, 126 S. Ct. 961, 967-968 (2006).  It is preferable "to enjoin only the unconstitutional applications of a statute while leaving other applications in force, or to sever its problematic portions while leaving the remainder intact." *Id.*, 546 U.S. at 329, 126 S. Ct. at 967 (citations omitted).

Severability is a matter of state law, see *Russell v. Burris*, 146 F.3d 563, 573 (8th Cir.1998)(citing *Leavitt v. Jane L.*, 518 U.S. 137, 139, 116 S. Ct. 2068 (1996)).  Under Arkansas law, "an act may be unconstitutional in part and yet be valid as to the remainder." *Ex Parte Levy*, 204 Ark. 657, 163 S.W.2d 529 (1942).   In determining whether a constitutionally invalid portion of a legislative enactment is fatal to the entire legislation, the Supreme Court of Arkansas looks to "(1) whether a single purpose is meant to be accomplished by the act; and (2) whether the sections of the act are interrelated and dependent upon each other."[4]   *U.S. Term Limits, Inc. v. Hill*, 316 Ark. 251, 872 S.W.2d 349, 357 (1994).

Plaintiffs argue that the General Assembly intended to accomplish a single purpose with Act 301: to ban abortions at the stage of pregnancy when a fetal heartbeat can be detected by an

---

[4]The well-established severability analysis applied by the Supreme Court of Arkansas comports with the mandate of Arkansas Code Annotated § 1-2-117, which provides:

> Except as otherwise specifically provided in this Code, in the event any title, subtitle, chapter, subchapter, section, subsection, subdivision, paragraph, item, sentence, clause, phrase, or word of this Code is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of this Code which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional was not originally a part of this Code.

abdominal ultrasound examination.   They maintain that Act 301's operative provisions are interrelated and interdependent and together serve the single, impermissible purpose of banning abortions at twelve weeks' gestation.   Plaintiffs propose that the General Assembly designated abdominal ultrasound as the required method for fetal heartbeat detection solely for the purpose of determining whether the twelve-week ban applies.   They contend that when the General Assembly drafted Act 301, it had in mind that "if a fetal heartbeat  is detected via abdominal ultrasound, the pregnancy must be at least [twelve] weeks along."  ECF No. 48-3, at 10 n.8. According to Plaintiffs, the written disclosure requirement is intended to "inform patients of the rationale for the ban, not to provide patients with information to aid their decision-making process."  ECF No. 48-3.

Act 301 expressly  requires an abdominal ultrasound for the stated purpose of testing for a heartbeat, not for the purpose of determining gestational age.  In accordance with the plain language of the statute, if a fetal heartbeat is detected during the abdominal ultrasound examination, the physician must inform the pregnant woman in writing that the fetus possesses a heartbeat and the statistical probability of bringing the unborn child to term based on gestational age.  These informational disclosures are required regardless of whether the fetus has attained twelve weeks' gestation.  Although a physician would by necessity determine the gestational age of the fetus as part of determining the statistical probability of bringing the fetus to term, the Act does not mandate a particular method for determining gestational age.

To determine the purpose of Act 301, the Court need look no further than its title, "AN ACT TO CREATE THE ARKANSAS HUMAN HEARTBEAT PROTECTION ACT; TO PROTECT UNBORN CHILDREN; AND FOR OTHER PURPOSES." *See Hobbs v. Jones,* 2012

Ark. 293, 2012 WL 2362712 (2012)(determining legislative purpose solely by reference to act's title and emergency clause).[5]   The Court finds it clear that the General Assembly drafted Act 301 with a single purpose: to protect unborn children.[6]

When the purpose of a legislative act is "'to accomplish a single object only, and some of its provisions are void, the whole must fail, unless sufficient remains to effect the object without the aid of the invalid portion.'" *Ex parte   Levy,* 204 Ark. 657, 163 S.W.2d 529, 531 (1942)(emphasis added)(quoting Cooley's Constitutional Limitations (6th Ed.)).   Important to the question of severability is "whether the portion of the act remaining is complete in itself and capable of being executed wholly independent of that which was rejected." *Id*., 316 Ark at 268, 872 S.W.2d at 358.

Plaintiffs assert several arguments against severance.   First, they argue that the General Assembly "only required information to be provided to women subject to the ban" and "sought

---

[5]In *Hobbs v. Jones,* 2012 Ark. 293, 2012 WL 2362712 (2012), the Supreme Court of Arkansas considered whether invalid portions of the Arkansas Method of  Execution Act could be severed from other provisions.   Under the first prong of the severability test, the Court found that the clear purpose of the Act was to provide the procedures by which the State may execute a capital defendant, sentenced to death by lethal injection.   The Court determined the purpose of the Act solely by reference to its title and emergency clause.   The Court stated:   "We need look no further than the act itself.   Its title states that it is '[a]n act to clarify the existing procedures for capital punishment by lethal injection; and for other purposes'; its subtitle is '[t]o clarify the existing procedures for capital punishment by lethal injection.'" *Hobbs,* 2012 Ark. 293, 17, 2012 WL 2362712, 9 (2012).

As for the inclusion of the phrase "and for other purposes" included in the Act's title, as noted by Plaintiffs, the Arkansas Supreme Court has long held that "[t]he concluding clause, 'and for other purposes,' means that any other purposes not enumerated, but found in the body of the act, would be purposes of a like nature with those already mentioned." ECF No. 48-3, at 11 n.9(citing *Nixon v. Allen*, 234 S.W. 45, 47 (Ark. 1921).

[6]The Supreme Court has explained that *Roe v. Wade* "implies no limitation on the authority of a State to make a value judgment favoring childbirth over abortion . . . . " *Maher v. Roe,* 432 U.S. 464, 474, 97 S.Ct. 2376, 2382 (1977).

to create a unitary law that bans abortion care after a certain point in pregnancy." ECF No. 48-3, at 9. This argument is without merit. The plain language of the statute provides that the disclosures must be given when, and only when, a heartbeat is detected via abdominal ultrasound, but the twelve-week abortion ban applies when (1) a heartbeat is detected via abdominal ultrasound *and* (2) and the fetus is "twelve weeks or greater gestation." Ark. Code Ann. § 20-16-1304(a).

Second, Plaintiffs note that the disclosure provision references the twelve-week abortion ban by requiring disclosure that "an abortion is prohibited under § 20-16-1304." However, the Court has determined that this particular disclosure must be stricken as an integral component of the twelve-week ban. The crucial question that remains is whether the heartbeat testing and disclosure portions of the Act are sufficient to accomplish the purpose of protecting unborn children.

Third, Plaintiffs contend that the unintended, practical consequence of Act 301 is that women seeking an abortion at an early stage of pregnancy will be forced to undergo an abdominal ultrasound and a vaginal ultrasound.[7] Plaintiffs present no evidence that such is the case. Dr. Cathey testifies that a physician must determine gestational age before an abortion procedure. She further testifies that at the early stages of pregnancy, "an abdominal ultrasound does not produce images that are sufficiently clear to permit accurate gestational dating" and that

_____

[7]Plaintiffs argue that by requiring heartbeat testing via abdominal ultrasound, Act 301 creates an incentive for women to delay an abortion procedure to later in the pregnancy when only a single ultrasound examination would be necessary. According to Plaintiffs, this unintended consequence "further demonstrates that the purpose of the abdominal ultrasound . . . is to determine whether the ban applies, not to ascertain information to aid the decision making process . . . ." ECF No. 55, at 9.

"as a result[,] some other method of gestational testing, such as vaginal ultrasound, must be used."  Cathey Dec., ECF No. 48-2, ¶ 8.  Dr. Cathey does not state, as Plaintiffs suggest, that before performing an early-term abortion, a physician will necessarily utilize a vaginal ultrasound for gestational dating.  The State acknowledges that if a fetal heartbeat has been detected by abdominal ultrasound, the physician will be required to calculate the probable gestational age of the fetus as part of providing informational disclosures, but nothing in the Act requires that a physician perform a vaginal ultrasound examination to determine gestational age.[8]

Fourth, Plaintiffs note that Act 301 lacks a severability clause, which, they argue, suggests a legislative intent to pass the Act as a whole.  The absence of a severability clause is a factor to consider, but it is not determinative.  *See Berry v. Gordon*  237 Ark. 547, 865-866, 376 S.W.2d 279, 288 (1964)("It goes almost without saying that there has never been any requirement that an act must have a severability clause before an invalid section can be found to be separable from the rest of the act.").  "If the part which remains after the defective portion is severed is capable of carrying out the purpose of the legislature, the courts will have little difficulty in finding the legislative intent to make separable, even if no separability clause has been included."  *Id.* (citations omitted).

Fifth,  Plaintiffs assert that Act 301's testing and disclosure requirements duplicate requirements of  existing state law, and they contend that such duplication is evidence that the

---

[8]The Court notes that under the informed consent provision of the Arkansas Woman's Right to Know Act, codified at Ark. Code Ann. §§ 20-16-901 through 908, before the day of an abortion, a physician must tell the woman seeking an abortion the "probable gestational age of the fetus." *See* Ark. Code Ann. § 20-16-901.  The Woman's Right to Know Act further provides that "'[p]robable gestational age of the fetus' means what in the judgment of the physician will with reasonable probability be the gestational age of the fetus at the time the abortion is planned to be performed."  Ark. Code Ann. 20-16-902(9).

residual provisions were not intended to operate without the twelve-week ban.   Plaintiffs cite Arkansas Code § 20-16-602, which provides:   "All physicians who use ultrasound equipment in the performance of an abortion shall inform the woman that she has the right to view the ultrasound image of her unborn child before an abortion is performed."  Plaintiffs also  point to the Arkansas Woman's Right to Know Act, codified at Ark. Code Ann. §§ 20-16-901 through 908, which requires physicians to provide certain information to women before an abortion. Plaintiffs fail to cite a single Arkansas statute that duplicates the specific fetal heartbeat testing and disclosure provisions set forth under Act 301.

After careful consideration, the Court finds that the remaining heartbeat testing and disclosure requirements are independently capable of furthering the stated purpose of Act 301, to protect unborn children, and that they are severable from the unconstitutional twelve-week ban and the requirement of license revocation for a physician who performs an abortion banned under the Act.   The State, from the inception of a pregnancy, maintains its own interest in protecting the life of a fetus that may become a child, and the Supreme Court has recognized that the disclosure of truthful information about fetal development is relevant to a woman's decision-making process and is  rationally related to the State's interest in protecting the unborn.  *See Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 882-883, 112 S.Ct. 2791, 2823-2824 (1992).  States may further the "legitimate goal of protecting the life of the unborn" through "legislation aimed at ensuring a decision that is mature and informed, even when in doing so the State expresses a preference for childbirth over abortion."  *Casey*, 505 U.S. at 883, 112 S. Ct. at 2824.

For the reasons stated, the Court will permanently enjoin the enforcement of the

following portions of the Arkansas Human Heartbeat Protection Act, which is codified at Ark. Code Ann. §§ 20-16-1301 through 1307: (1) Ark. Code Ann. § 20-16-1304(a), which prohibits abortions where a fetal heartbeat is detected and the fetus has attained twelve weeks' gestation; (2) Ark. Code Ann. § 20-16-1304(b), which requires revocation of the medical license of a physician who performs an abortion in violation of Ark. Code Ann. § 20-16-1304(a); and (3) Ark. Code Ann. § 20-16-1303(d)(3), which requires that a physician inform the pregnant woman that an abortion is prohibited under Ark. Code Ann. § 20-16-1304(a).   All remaining provisions of the Act remain in effect.[9]

## V.

IT IS THEREFORE ORDERED that Plaintiffs' cross-motion for summary judgment (ECF No. 48) is GRANTED IN PART AND DENIED IN PART, and Defendant's motion for partial summary judgment (ECF No. 40) is GRANTED.   Plaintiffs' motion is granted to the extent that the State is permanently enjoined from enforcing the following provisions of the Arkansas Human Heartbeat Protection Act:   (1) Ark. Code Ann. § 20-16-1304(a), which

---

[9]The Court's decision leaves intact Ark. Code Ann. § 20-16-1301(8), which reads: "'Viability' means a medical condition that begins with a detectible heartbeat." The Court notes that the foregoing statement conveys that viability "begins" with a heartbeat; it does not declare that viability is *fully achieved* with the advent of a heartbeat. Such a declaration would undoubtedly contravene the Supreme Court's determination that viability in a particular case is a matter for medical judgment, and it is attained when, in the judgment of the attending physician on the particular facts of the case at hand, that there is a reasonable likelihood of sustained survival outside of the womb. In any event, the Court need not pass on the import or validity of Act 301's definition of the term "viability." Whether the definition set forth under § 20-16-1301(8) might be used to interpret other state statutes or regulations is a matter for Arkansas courts and is not at issue in this case. This Court "'is not empowered to decide . . . abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue in the case before it.'" *Webster v. Reproductive Health Services,* 492 U.S. 490, 507, 109 S.Ct. 3040, 3050 (1989)(quoting *Tyler v. Judges of Court of Registration*, 179 U.S. 405, 409, 21 S.Ct. 206, 208 (1900)).

16

prohibits abortions where a fetal heartbeat is detected and the fetus has attained twelve weeks' gestation; (2) Ark. Code Ann. § 20-16-1304(b), which requires revocation of the medical license of a physician who performs an abortion in violation of Ark. Code Ann. § 20-16-1304(a); and (3) Ark. Code Ann. § 20-16-1303(d)(3), which requires that a physician inform the pregnant woman that an abortion is prohibited under Ark. Code Ann. § 20-16-1304(a).   All other provisions of the Arkansas Human Heartbeat Protection Act remain in effect.  Judgment shall be entered accordingly.

IT IS SO ORDERED THIS 14TH DAY OF MARCH, 2014.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE