# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1891

_____

Louis Jerry Edwards, M.D., on behalf of himself and his patients; Tom Tvedten, M.D., on behalf of himself and his patients

*Plaintiffs - Appellees*

v.

Joseph M. Beck, M.D., President of the Arkansas State Medical Board, and his successors in office, in their official capacity; Omar Atiq, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Harold B. Betton, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Steven L. Cathey, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Jim Citty, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Bob Cogburn, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; William F. Dudding, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Roger Harmon, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; John E. Hearnsberger, II, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Verly Hodges, D.O., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Scott Pace, Pharm.D., J.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; John H. Scribner, M.D., officer and member of the Arkansas State Medical Board, and his successors in office, in their official capacity; Sylvia D. Simon, M.D., officer and member of the Arkansas

State Medical Board, and her successors in office, in their official capacity; John .
Weiss, M.D., officer and member of the Arkansas State Medical Board, and his
successors in office, in their official capacity

*Defendants - Appellants*

-------------------------------

Curtis James Neeley, Jr.; Women Injured by Abortion; An Abortion Survivor;
Liberty Council, Inc.; Concepts of Truth, Inc.

*Amici on Behalf of Appellant(s)*

Physicians for Reproductive Health; National Abortion Federation; American
Public Health Association

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 13, 2015
Filed: May 27, 2015
[Published]

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

The Arkansas State Medical Board (the State) appeals from a summary
judgment permanently enjoining certain sections of the Arkansas Human Heartbeat

-2-

Protection Act.  Ark. Code Ann. §§ 20-16-1301 to 1307 (2013).  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

### I.

The Act provides that a licensed physician "shall not perform an abortion on a pregnant woman before the person tests the pregnant woman to determine whether the fetus that a pregnant woman is carrying possesses a detectible heartbeat."  Ark. Code Ann. § 20-16-1303(a) (footnote omitted).  Further, a physician "shall not perform an abortion on a pregnant woman with the specific intent of causing or abetting the termination of the life of an unborn human individual whose heartbeat has been detected under § 20-15-1303 and is twelve (12) weeks or greater gestation." § 20-16-1304(a).  If a physician violates section 1304, his or her medical license shall be revoked.  § 20-16-1304(b).  The Act provides exceptions to protect the life of the mother, for a pregnancy resulting from rape or incest, or for a medical emergency. § 20-16-1305.  The Act requires informed disclosures about the existence of a heartbeat and the probability of bringing the unborn to term.  § 20-16-1303(d), (e).

Two Arkansas physicians, on behalf of themselves and their patients, challenged the constitutionality of the Act, seeking a permanent injunction.  The district court[1] granted a temporary injunction. *Edwards v. Beck*, 946 F. Supp. 2d 843, 851 (E.D. Ark. 2013).  The State moved for partial summary judgment, arguing the testing and disclosure provisions were valid and severable.  The plaintiffs submitted affidavits that a fetus is generally not viable until 24 weeks' gestation, is never viable at 12 weeks, and, in all normally-progressing pregnancies, has a detectable heartbeat by 12 weeks.

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

The State left the plaintiffs' factual allegations uncontroverted. The only factual record presented in this case was by plaintiffs, the two-page declaration of Dr. Janet Cathey. Dr. Cathey stated that "[a]t twelve (12) weeks of pregnancy, a fetus cannot in any circumstance survive outside the uterus. Thus, a fetus at 12 weeks is not and cannot be viable." (Cathey Dec. at 2.) As the district court noted, "the State offered no competing evidence challenging Dr. Cathey's testimony or the statistical data referenced in Plaintiffs' brief." (Order at 8.) The district court granted summary judgment, permanently enjoining sections 20-16-1303(d)(3) and 20-16-1304. *Edwards v. Beck*, 8 F. Supp. 3d 1091, 1102 (E.D. Ark. 2014).

The court granted summary judgment to the State on the rest of the Act, finding the testing and informed disclosures valid and severable. *See Webster v. Reproductive Health Services*, 492 U.S. 490, 519-20 (1989) (upholding Missouri's 20-week viability testing requirement); *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 734-35 (8th Cir. 2008) (en banc) ("[W]hile the State cannot compel an individual simply to speak the State's ideological message, it can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion, even if that information might also encourage the patient to choose childbirth over abortion."). The State appeals the district court's grant of summary judgment and permanent injunction of sections 20-16-1303(d)(3) and 20-16-1304.

This court reviews summary judgment de novo, and a permanent injunction for abuse of discretion. *Roach v. Stouffer*, 560 F.3d 860, 864 (8th Cir. 2009).

In 1992, the Supreme Court "reaffirm[ed]" the "right of the woman to choose to have an abortion before viability and to obtain it without undue interference from

-4-

the State." *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833, 846 (1992).[2]  Since then, that principle has been "accepted as controlling" by a majority of the Court.  *See Gonzales v. Carhart*, 550 U.S. 124, 156 (2007); *see also id.* at 187 (Ginsburg, J., dissenting) (recognizing that the Court "merely 'assume[d]' for the moment" the "continuing vitality" of the rule and criticizing the Court for not "retain[ing]" or "reaffirm[ing]" the principle).  Like the Court in *Gonzales*, "[w]e assume the . . . principles [from *Casey*] for the purposes of this opinion." *Id.* at 146.  A state also retains interests in fostering maternal health and protecting unborn life, which justify regulations that are not an undue burden on a woman's ability to terminate her pregnancy before viability.  *Casey*, 505 U.S. at 877-78.  A regulation is an undue burden if it "has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus." *Id.* at 877.

The State tries to frame the law as a regulation, not a ban, on pre-viability abortions because they are available during the first 12 weeks (and thereafter if within the exceptions).  Whether or not "exceptions are made for particular circumstances, a State may not prohibit any woman from making the ultimate decision to terminate her pregnancy before viability." *Id.* at 879.  By banning abortions after 12 weeks' gestation, the Act prohibits women from making the ultimate decision to terminate a pregnancy at a point before viability.  Because the State made no attempt to refute the plaintiffs' assertions of fact, the district court's summary judgment order must be affirmed.  *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") *and* (e)(2) ("If a party . . . fails to properly

---

[2]The other principles "reaffirm[ed]" in *Casey* include "a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health" and "the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child." *Casey*, 505 U.S. at 846.

address another party's assertion of fact as required by Rule 56(c), the court may . . . . consider the fact undisputed for purposes of the motion."). *See also Casey*, 505 U.S. at 874.

II.

As an intermediate court of appeals, this court is *bound* by the Supreme Court's decisions in *Casey* and the "assum[ption]" of *Casey*'s "principles" in *Gonzales*. *See Gonzales*, 550 U.S. at 146.  However, undeniably, medical and technological advances along with mankind's ever increasing knowledge of prenatal life since the Court decided *Roe v. Wade*, 410 U.S. 113 (1973) and *Casey* make application of *Casey*'s viability standard more difficult and render more critical the parties' obligation to assure that the court has the benefit of an adequate scientific record in cases where the standard is applied.

"The Supreme Court has recognized that viability varies among pregnancies and that improvements in medical technology will both push later in pregnancy the point at which abortion is safer than childbirth and advance earlier in gestation the point of fetal viability." *Isaacson v. Horne*, 716 F.3d 1213, 1224 (9th Cir. 2013) (citing *Casey*, 505 U.S. at 860).  The viability standard "is clearly on a collision course with itself." *City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 458 (1983) (O'Connor, J., dissenting).  "As medical science becomes better able to provide for the separate existence of the fetus, the point of viability is moved further back toward conception." *Id.* (O'Connor, J., dissenting).

And we have witnessed in the four decades since the Court decided *Roe* how scientific advancements have moved the viability point back.  When *Roe* was decided, "[v]iability [was] usually placed at about seven months (28 weeks) but [could] occur earlier, even at 24 weeks." *Roe*, 410 U.S. at 160 (footnote omitted).  But the joint opinion in *Casey* recognized "how time has overtaken some of *Roe*'s factual

-6-

assumptions," including that "advances in neonatal care have advanced viability to a point somewhat earlier." *Casey*, 505 U.S. at 860 (citations omitted).  And, in the present case, Dr. Janet Cathey, a board-certified obstetrician and gynecologist, averred that "viability generally is not possible until at least 24 weeks" but recognized that the "viability determination varies on an *individual basis*."  (Emphasis added.) Indeed, real-life events have proven the *individuality* of the viability determination to be true.

> Greater survival rates among pre-term infants born at earlier stages push back the viability line.  In October, 2006, Amillia Taylor was born at twenty-one weeks and six days, and has thus far been resilient in the face of minimal odds of survival.  This is the youngest fetus to have ever survived delivery, raising new questions about where the viability line should be drawn.

Kevin J. Mitchell, *Guarding the Threshold of Birth*, 20 Regent U. L. Rev. 257, 264 n.30 (2008) (citing  Pat Wingert, *The Baby Who's Not Supposed to be Alive*, NEWSWEEK, Mar. 5, 2007, at 59, *available at* http://www.msnbc.msn.com/id/17304274/site/newsweek); *see also* Aida Edemariam, *Against All Odds*, Guardian (Feb. 20, 2007), *available at* http://www.theguardian.com/society/2007/feb/21/health.lifeandhealth (last visited April 28, 2015) ("There is something otherworldly about the picture that appeared around the world yesterday: two tiny brown-pink feet, almost translucent, poking through an adult's fingers.  You had to look twice to be sure that they were indeed feet.  They belong to Amillia Taylor, who was born in Miami last October, 21 weeks and six days after conception.  She weighed less than 10oz at birth-not even as much as two ordinary bars of soap-and she was just 9 inches long.  Amillia, who is expected to be discharged from hospital in the next couple of days, is officially the most premature baby ever to have survived.").

-7-

"Since *Roe* was decided in 1973, advances in medical and scientific technology have greatly expanded our knowledge of prenatal life." *Hamilton v. Scott*, 97 So. 3d 728, 742 (Ala. 2012) (Parker, J., concurring specially). The viability standard "is inherently tied to the state of medical technology that exists whenever particular litigation ensues." *City of Akron*, 462 U.S. at 458 (O'Connor, J., dissenting). As shown *supra*, states in the 1970s lacked the power to ban an abortion of a 24-week-old-fetus because that fetus would have not satisfied the viability standard of that time period. *See Roe*, 410 U.S. at 160 (placing viability at "seven months (28 weeks)"). Today, however, that same fetus would be considered "viable," and states would have the "power to restrict [such] abortions." *Casey*, 505 U.S. at 846.

Because a viability determination necessarily calls for a case-by-case determination and changes over time based on medical advancements, "legislatures are better suited to make the necessary factual judgments in this area." *City of Akron*, 462 U.S. at 458 (O'Connor, J., dissenting). Unfortunately, the viability standard "forces legislatures, as a matter of constitutional law, to speculate about what constitutes [viability] at any given time." *Id*. (O'Connor, J., dissenting). Courts are ill-suited to second-guess these legislative judgments. *See id.* (O'Connor, J., dissenting) ("Without the necessary expertise or ability, courts must then pretend to act as science review boards and examine those legislative judgments."). To substitute its own preference to that of the legislature in this area is *not* the proper role of a court. *See* Federalist No. 78 ("It can be of no weight to say that the courts, on the pretense of a repugnancy, may substitute their own pleasure to the constitutional intentions of the legislature. This might as well happen in the case of two contradictory statutes; or it might as well happen in every adjudication upon any single statute. The courts must declare the sense of the law; and if they should be disposed to exercise WILL instead of JUDGMENT, the consequence would equally be the substitution of their pleasure to that of the legislative body. The observation, if it prove any thing, would prove that there ought to be no judges distinct from that body.").

-8-

This case underscores the importance of the parties, particularly the state, developing the record in a meaningful way so as to present a real opportunity for the court to examine viability, case by case,  as viability steadily moves back towards conception.

* * * * * * *

The judgment is affirmed.

_____

-9-

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

May 27, 2015

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE:  14-1891  Louis Edwards, et al v. Joseph Beck, et al

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellants was Colin Jorgensen, Assistant Attorney General, of Little Rock, AR.

An amicus brief was filed by Mr. Curtis Neeley, Jr. of Fayetteville, AR on behalf of appellants.

The following attorneys appeared on the amicus brief of An Abortion Survivor and Women Injured by Abortion in support of appellants; Allan Parker, Jr. of San Antonio, TX, and Kathleen Cassidy Goodman, of Helotes, TX.

The following attorneys appeared on the amicus brief of Concepts of Truth, Inc. and Liberty Council, Inc. in support of appellants; Matthew Staver, of Orlando, FL, Anita Staver of Orlando, FL, Mary E. McAlister, of Lynchburg, VA and Daniel Schmid of Lynchburg, VA.

Counsel who presented argument on behalf of the appellees was Susan Talcott Camp, of New York, NY. The following attorneys appeared on the appellees brief;  Bettina E. Brownstein, of Little Rock, AR.,  Holly Elizabeth Dickson, of Little Rock, AR., and Stephanie Toti, of New York, NY.

The following attorney appeared on the amicus brief of National Abortion Federation and Physicians for Reproductive Health in support of appellees; Claude Szyfer, of New York, NY.

The following attorneys appeared on the amicus brief of American Public Health Association in support of appellees; Shannon Selden, of New York, NY, Courtney Dankworth, of New York, NY, and Marjorie Menza, of New York, NY.

The judge who heard the case in the district court was Honorable Susan Webber Wright. The judgment of the district court was entered on March 14, 2014.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

LAB

Enclosure(s)

cc:  Lois Law
       MO Lawyers Weekly

District Court/Agency Case Number(s):  4:13-cv-00224-SWW

**United States Court of Appeals**
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

May 27, 2015

Mr. Colin Jorgensen
ATTORNEY GENERAL'S OFFICE
200 Catlett-Prien Building
323 Center Street
Little Rock, AR  72201-0000

RE:  14-1891  Louis Edwards, et al v. Joseph Beck, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance
with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the
opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-
submission procedure to ensure that any contemplated filing is timely and in compliance with the
rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be
received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed
petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period
for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any
petition for rehearing or petition for rehearing en banc which is not received within the 14 day
period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

LAB

Enclosure(s)

cc:    Ms. Bettina E. Brownstein
       Ms. Susan Talcott Camp
       Ms. Courtney M. Dankworth
       Ms. Holly Elizabeth Dickson
       Ms. Mary Elizabeth McAlister
       Mr. Jim McCormack
       Mr. Curtis James Neeley Jr.
       Mr. Allan Edward Parker Jr.
       Ms. Shannon R. Selden
       Ms. Anita Staver

Mr. Claude Gabriel Szyfer
Ms. Stephanie Toti

   District Court/Agency Case Number(s):   4:13-cv-00224-SWW

 14-1891 Louis Edwards, et al v. Joseph Beck, et al "per curiam opinion filed" (4:13-cv-00224-SWW)
ca08ml_cmecf_Notify
to:
05/27/2015 08:10 AM
Hide Details
From: ca08ml_cmecf_Notify@ca8.uscourts.gov
To:

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.**

**Eighth Circuit Court of Appeals**

**Notice of Docket Activity**

The following transaction was filed on 05/27/2015

  **Case Name:**    Louis Edwards, et al v. Joseph Beck, et al

  **Case Number:**  14-1891

  **Document(s):**  Document(s)

**Docket Text:**
PER CURIAM OPINION FILED - THE COURT: Lavenski R. Smith, Duane Benton and Bobby E. Shepherd (PUBLISHED) [4278822] [14-1891] (Lorri Brown)

**Notice will be electronically mailed to:**

Ms. Bettina E. Brownstein: bettinabrownstein@gmail.com
Ms. Susan Talcott Camp, Deputy Director: tcamp@aclu.org, ademas@aclu.org
Ms. Courtney M. Dankworth: cmdankwo@debevoise.com, mao-ecf@debevoise.com
Ms. Holly Elizabeth Dickson: holly@acluarkansas.org, equalityatty@yahoo.com
Mr. Colin Jorgensen: colin.jorgensen@arkansasag.gov, johnna.hoffman@arkansasag.gov, agcivil@arkansasag.gov
Ms. Mary Elizabeth McAlister: court@lc.org
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Curtis James Neeley, Jr.: Curtis@CurtisNeeley.com
Mr. Allan Edward Parker, Jr.: aparker@txjf.org
Ms. Shannon R. Selden: srselden@debevoise.com, mao-ecf@debevoise.com
Ms. Anita Staver: court@lc.org
Mr. Claude Gabriel Szyfer: cszyfer@stroock.com, docketing@stroock.com
Ms. Stephanie Toti: stoti@reprorights.org, jdakin@reprorights.org
Lois Law: FED08@loislaw.com
MO Lawyers Weekly: stephanie.maniscalco@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com

The following document(s) are associated with this transaction:
**Document Description:** Published Opinion Filed
**Original Filename:** 141891P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/27/2015] [FileNumber=4278822-0]
[b61f98955e23320b2869d76545fcebd0d67ef38fc54308230a685ff8456bbffbd60e4ffe17e1be121fa673b7c3d0ea7505b225391afcd461ffc5a8e47874b50d]]

**Document Description:** Letter To Publishing
**Original Filename:** /opt/ACECF/live/forms/lbrown_141891_4278822_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/27/2015] [FileNumber=4278822-1]
[0379d839bfefd81e639e05764d45a8270e9f0fddbb9424b13adece52c38bc97aa65b0ad70de25b77a622c9b1c57814235f4b394818102c0469066e2d0dada8220]]
**Recipients:**

- Lois Law
- MO Lawyers Weekly
- West Publishing

**Document Description:** Counsel Opinion Letter
**Original Filename:** /opt/ACECF/live/forms/lbrown_141891_4278822_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=05/27/2015] [FileNumber=4278822-2]
[894cb03bc75d446a35dd72ac0aca9000e43e83fc3fab3fd189b180bee8416c7f863928b0cb464209b87ea8acef92732fe83e2ba9d183467c9e9893d09e705b78]]
**Recipients:**

- Ms. Bettina E. Brownstein
- Ms. Susan Talcott Camp, Deputy Director
- Ms. Courtney M. Dankworth
- Ms. Holly Elizabeth Dickson
- Mr. Colin Jorgensen
- Ms. Mary Elizabeth McAlister

- Mr. Jim McCormack, Clerk of Court
- Mr. Curtis James Neeley, Jr.
- Mr. Allan Edward Parker, Jr.
- Ms. Shannon R. Selden
- Ms. Anita Staver
- Mr. Claude Gabriel Szyfer
- Ms. Stephanie Toti

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 4278822
**RELIEF(S) DOCKETED:**
  for publication
**DOCKET PART(S) ADDED:** 5314317, 5314318, 5314319